**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

AUGUSTO CESAR REYES CAMPOS[1],

Petitioner,

v.

JOHN MATTOS, *et al.*,

Respondents.

Case No. 2:26-cv-00850-RFB-BNW

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Augusto Cesar Reyes Campos' (ECF No. 6) First Amended Petition for Writ of Habeas Corpus and (ECF No. 14) Motion for Temporary Restraining Order ("TRO"). He challenges the lawfulness of his ongoing detention in the custody of Immigration and Customs Enforcement ("ICE'). For the following reasons, the Court grants the Amended Petition and orders Petitioner's immediate release from detention. The Court further denies the Motion for TRO as moot.

## I.   PROCEDURAL BACKGROUND

On March 12, 2026, Petitioner submitted a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 through the prison mail system at Nevada Southern Detention Center (NSDC). See ECF No. 1-1. The *pro se* Petition was received and docketed on March 24, 2026. ECF No. 1. The same day this Court granted Petitioner leave to proceed *in forma pauperis*, appointed the Federal Public Defender as counsel, ordered Federal Respondents to produce relevant discovery to Petitioner's counsel, and set a deadline of April 7, 2026 for Petitioner to file

---

[1] The docket and case caption currently incorrectly names Petitioner as "Augusto Cesar Campos Reyes." The Court will thus order the Clerk of Court to correct the docket and case caption to reflect Petitioner's name as Augusto Cesar Reyes Campos.

an amended petition with the assistance of that discovery and counsel. See ECF No. 4.

On April 3, 2026, Petitioner filed his First Amended Petition ("Am. Pet."). See ECF No. 6. The Amended Petition asserts that Petitioner's continued detention violates 8 U.S.C. § 1226(a) and the Due Process Clause of the Fifth Amendment and asks the Court to order his immediate release from custody. See Am. Pet. at 6. Petitioner attached his Form I-862 Notice to Appear issued by the Department Homeland Security ("DHS") on June 4, 2023, which alleges that he is an "arriving alien" who "applied for admission into the United States of America at the Nogales, Arizona port of entry, and was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card or other valid entry document required by the Immigration and Nationality Act." See Am. Pet., Ex. 3 at 5 ("NTA"). The NTA commenced removal proceedings against Petitioner, charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). See id. at 2. The NTA further states that Petitioner was paroled into the United States under 8 U.S.C. § 1182(d)(5). See id. Pursuant to the NTA Petitioner was ordered to appear before an immigration judge in West Valley, Utah on April 7, 2026. See id.

On April 3, 2026, the Court reviewed the Amended Petition and determined that Petitioner was likely entitled to the same relief as the Court granted to a similarly situated petitioner in Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159 (D. Nev. 2025), given he was paroled into the country pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) and detained without pre-deprivation notice and an opportunity to be heard. See Order to Show Cause at 1, ECF No. 7 ("OSC"). The Court ordered Respondents to show cause why the writ should not be granted, by filing a return certifying the true cause of Petitioner's detention by April 8, 2026. See id. (citing 28 U.S.C. § 2243). The Court further ordered Federal Respondents to file all documents reflecting Petitioner's parole into the United States pursuant to 8 U.S.C. § 1182(d)(5) or certify that such documents are not in their possession, custody, or control. See id. at 2.

On April 8, 2026, Federal Respondents filed their Return to Petitioner's Amended Petition ("Return"). See ECF No. 9. Federal Respondents asserted Petitioner is a member of the certified class in Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC based on the "Order to Show Cause in this matter" even though the OSC made no reference to Jacobo-Ramirez. See Return at

1. The Return did not address why the Court should not order the same relief in this case as it did in Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159 (D. Nev. 2025). See id. The Return similarly failed to address the fact that Petitioner was paroled into the country—even though the documents attached to the Return confirm that fact, see Return, Ex. A at 3 (DHS Form I-213) [hereinafter "I-213"]; id. at 5 (NTA). See id. The Return further did not provide any individualized justification for Petitioner's arrest and detention—it merely preserved the issue of whether § 1225(b)(2)(A) applies to Petitioner for appeal by reference to Respondents' briefing in Jacobo-Ramirez. See id.

On April 10, 2026, Petitioner filed his Traverse. See ECF No. 11. On April 22, 2026, Petitioner filed a Notice of Class Membership, asserting he is a member of the certified class in Jacobo-Ramirez v. Mullin and entitled to relief pursuant to the classwide declaratory judgment and vacatur issued by this Court in that case. See ECF No. 13 (citing Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026).

The Court's Order granting the Amended Petition follows.


### III.   STANDARD OF REVIEW

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted). Federal courts "have a time-tested device, the writ, to maintain the 'delicate balance of governance that is itself the surest safeguard of liberty.'" Boumediene v. Bush, 553 U.S. 723, 745 (2008) (quoting Hamdi, 542 U.S. at 536). The writ protects against "arbitrary imprisonments," which "have been, in all ages, the favorite and most formidable instruments of tyranny." Id. at 744 (quoting the Federalist No. 84 (Alexander Hamilton)). This Court has jurisdiction to grant writs of habeas corpus to noncitizens who are

being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention").

Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause why the writ should not be granted—i.e., to "make a return certifying the true cause of [ ] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken as true. See Carlson, 186 F.2d at 188 (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted). Similarly, the certified, undisputed allegations of respondent(s) should also be accepted as true unless they are contradicted by relevant evidence. See Carlson, 186 F.2d at 188.

## II.   FINDINGS OF FACT

The Court makes the following findings of fact based on the undisputed verified allegations in the Amended Petition and the documentary evidence supplied by the parties. Petitioner, his wife, and their five children came to the United States from Mexico in June 2023, after fleeing violence and persecution. See Am. Pet. at 3, ECF No. 6. On June 4, 2024, Petitioner applied for admission to the United States at the Nogales, Arizona Deconcini Port of Entry. See id., Ex. 1 at 3 (DHS Form I-213 Record of Deportable/Inadmissible Alien ("I-213")), ECF No. 6-2; id., Ex. 3 at 2 (NTA), ECF No. 6-4. The examining immigration officer determined Petitioner was inadmissible pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). See id., Ex. 1 at 3 (I-213) (referring to 8 U.S.C. § 1182(a)(7)(A)(i)(I)). Petitioner was personally served an NTA in Spanish, signed by a Customs and Border Patrol ("CBP") supervisory officer, which designated Petitioner as an "arriving alien" and *not* as "an alien present in the United States who

has not been admitted or paroled" and commenced removal proceedings based on the charge that he was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), because he lacked valid entry documents at the time he applied for admission. See id., Ex. 3 at 1 (NTA), ECF No. 6-4. The NTA required Petitioner to appear for an immigration judge in West Valley, Utah on April 7, 2026. See id. Rather than detain Petitioner, the CBP Officer paroled Petitioner into the country for one year pursuant to 8 U.S.C. § 1182(d)(5), "for urgent humanitarian reasons or significant public benefit." See id., Ex. 1 at 3 (I-213). In paroling Petitioner into the country under § 1182(d)(5), the CBP Officer determined Petitioner was "neither a security risk nor a risk of absconding." See 8 C.F.R. 212.5(b). As a § 1182(d)(5) parolee, Petitioner was eligible to obtain authorization to legally work within the country. See 8 C.F.R. § 274a.12(c)(11).

While at liberty in the country for nearly two years, Petitioner obtained a work permit, hired an immigration attorney, timely applied for asylum, and awaited his scheduled hearing in immigration court. See Am. Pet at 3, ECF No. 6. He provided for his family, as the sole breadwinner, by working in drywall and construction. Id. On February 17, 2026, he went to state court in St. George, Utah to pay a fee for a misdemeanor property damage offense. See id. There, ICE Officers apprehended him. See id. at 3–4. They arrested him without a warrant, and when Petitioner asked why he was being arrested, given he had obtained a work permit and was awaiting his immigration court date, the ICE Officers used profane language, took his work permit, and told him he was going to jail. See id. He has remained detained since.

According to the I-213, the ICE Deportation Officer Oliver Radtke who arrested Petitioner arrested him on the basis that "he entered the United States on June 4, 2023 through Nogales, Arizona without inspection by U.S. Immigration Officers" and not at a "designated port of entry." See Return, Ex. A at 3–4, ECF No. 9-1. At the time he was arrested, Petitioner's immigration court hearing was scheduled for September 23, 2027 in West Valley Utah. Id. at 3. The arresting ICE Officer charged him as being "present in the United States without being admitted or paroled" and arrested him on that basis. Id. at 4. The basis for his arrest was obviously erroneous, because the same I-213 Form that alleges Petitioner entered without inspection includes a description of his immigration history which states on June 4, 2023, Petitioner applied for admission to the United

- 5 -

States at the "Nogalez, AZ DeConcini Port of Entry" and was "paroled for one year." Id. Further, the arresting ICE Officers did not issue a new NTA to Petitioner; they relied on the NTA that was served to Petitioner in 2023 in arresting and detaining him, and that NTA did not allege that Petitioner was "present in the United States without having been "admitted or paroled." See id. at 5 (NTA).

On February 18, 2026, the arresting ICE Deportation Officer Radtke apparently initiated an initial custody determination under 8 U.S.C. § 1226(a) and decided Petitioner would remain detained—however nothing in the record indicates Officer Radtke considered whether Petitioner was dangerous or a flight risk or found any other individualized justification for Petitioner's detention, as required by regulation. See id. at 9 (DHS Form I-286 Notice of Custody Determination); 8 C.F.R.§§ 1236.1(8), 236.1(8)  (providing a noncitizen arrested under § 1226(a) an opportunity to "demonstrate to the satisfaction of the [arresting] officer that [release on bond or conditional parole] would not pose a danger to property or persons, and that [the noncitizen] is likely to appear for any future proceeding."). Officer Radtke failed to sign the Notice of Custody Determination. See id. Further, it does not appear Officer Radtke served the Notice of Custody Determination on Petitioner, as the line for "signature of alien" under "I acknowledge receipt of this notification" is blank and unsigned. See id. Despite apparently being arrested and detained pursuant to 8 U.S.C. § 1226(a), Petitioner was arrested without a warrant, as required by statute and regulation, see 8 C.F.R. § 236.1(b), and when he asked for release on bond, he was told he was ineligible. See Am. Pet. at 5. On March 10, 2026, Petitioner was told by an immigration judge for the Las Vegas Immigration Court that he was ineligible for bond. See id. at 6.

As a result of Petitioner's months of detention, Petitioner's wife has been suffering from anxiety and panic attacks, his family is behind on their bills, and their three minor children are depressed, anxious, and have been missing school. See Mot. for TRO at 2–3, ECF No. 14. Petitioner further "continues to suffer every moment that his unlawful detention is further prolonged." Id. at 3.

///

///

- 6 -

## III.    DISCUSSION

### A.  Class Membership and the Lawfulness of Petitioner's Detention Under the INA

Both Petitioner and Federal Respondents assert Petitioner is a member of the Jacobo-Ramirez Class. See generally Return at 1, ECF No. 9 ("Based on the decision by this Court in Jacobo-Ramirez . . . Petitioner is a Class Member."); see also Notice of Class Membership at 1, ECF No. 13 ("Petitioner . . . herby notifies this Court that he is a member of the certified class in in the case Jacobo Ramirez v. Mullin, No. 25-cv-02136-RFB-MDC (D. Nev.) currently pending in this district."). However, based on the record, the Court finds the parties are incorrect.

The Jacobo-Ramirez Class is defined as "[a]ll noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) *whom DHS alleges or will allege to have entered the United States without inspection or parole*; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States." Jacobo Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *33 (D. Nev. Mar. 30, 2026) (emphasis added). The Court finds Petitioner meets all but the third parameter for Jacobo-Ramirez Class Membership.

While Petitioner is (1) actively being detained by ICE, see generally, Am. Pet. at 6, ECF No. 6, (2) is currently in removal proceedings before the Las Vegas Immigration Court, see id., (3) and based on Federal Respondents' Return, is not subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231, the Court finds DHS does not allege that Petitioner entered the United States without inspection or parole. To the contrary, Petitioner's NTA, which sets forth the basis for Petitioner's on-going removal proceedings, charges Petitioner as inadmissible because he was not in possession of a valid entry document when he applied for admission and was inspected and paroled at the Nogales, Arizona Port of Entry, on June 4, 2023. See id., Ex. 3 at 2 (NTA). As such, the Court finds Petitioner is not a Jacobo-Ramirez Class Member, because he lawfully applied for admission at a designated port of entry, was inspected by immigration officers, and was paroled into the country on June 4, 2023.

Nevertheless, the record demonstrates Petitioner's most recent arrest by ICE was pursuant to 8 U.S.C § 1226(a) based on Federal Respondents own records, see Return, Ex. at 9 (DHS Form I-286 Notice of Custody Determination), and the fact that he was arrested while "*already inside the U.S.*" and not while Petitioner was "seeking admission" *i.e.* seeking to come "'from outside' into the United States.'" Jacobo Ramirez, 2026 WL 879799, at *16 (emphasis in original) (citing Torres v. Barr, 976 F.3d 918, 924 (9th Cir. 2020)). The Court thus finds that Petitioner's arrest without a warrant and without a meaningful initial custody determination, and his ongoing detention without a bond hearing, violates the INA, § 1226(a) and its implementing regulations. See Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753 (D. Nev. Apr. 6, 2026) (explaining the regulatory and statutory background of the warrant requirement for detaining noncitizens under § 1226(a) and holding that immigration authorities' failure to effectuate a noncitizen's arrest under the authority of a properly issued Form I-200 necessitated that noncitizen's immediate release from detention); see also Rodriguez Diaz, 53 F.4th at 1196. (explaining that noncitizens arrested and detained under § 1226(a) are entitled to an initial custody determination by the arresting ICE officer, and if ICE denies bond or conditional parole, a "bond hearing before an [immigration judge]" where they will be released if they can demonstrate that they are not "'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.") (citing 8 C.F.R. §§ 236.1(d)(1), 1003.129; Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); Matter of Barreiros, 10 I. & N. Dec. 536, 537–38 (B.I.A. 1964)).

The Court thus finds Petitioner's arrest and ongoing detention by ICE is unlawful under the INA and its implementing regulations.

### B. Due Process

For the reasons that follow, the Court further finds Petitioner's arrest and ongoing detention violates his constitutional right to due process. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.'") (quoting Reno v.

Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) (holding the "Fifth Amendment entitles aliens to due process of law in deportation proceedings.")."[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Noncitizen detainees charged with being in the U.S. illegally are entitled to procedural due process, meaning "notice and opportunity to be heard 'appropriate to the nature of the case.'" J.G.G., 605 U.S. at 673 (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950); see also A. A. R. P. v. Trump, 605 U.S. 91, 94 (2025). "Procedural due process rules are meant to protect" against "the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247 259 (1978).  Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (citing Reno, 507 U.S. at 302). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. Substantive due process thus protects noncitizens from arbitrary confinement by the government, which violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690 (internal quotations omitted) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992); Kansas v. Hendricks, 521 U.S. 346, 356 (1997).

### 1.      Procedural Due Process

To determine whether immigration detention violates procedural due process, courts apply

the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976) to analyze and balance both the private and governmental interests affected. See Rodriguez Diaz, 53 F.4th at 1203–1207 (collecting cases and clarifying that the Mathews test is appropriate in the context of immigration detention). Specifically, courts weigh the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation omitted).

On balance, the Court finds the Mathews factors weigh heavily in favor of Petitioner. First, Petitioner has a paramount interest in his physical liberty, "the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). That interest is especially weighty considering the process he has received, and that was available to him, upon his arrest and throughout his months of detention—that is, regarding the basis for his arrest and the government's custody determination, no process at all. See Rodriguez Diaz, 53 F.th at 1208 (considering the process the immigration detainee had already received during his detention pursuant to § 1226(a) and the further process that was available to him in weighing his private liberty interest).

Further, Petitioner's liberty interest is particularly strong given the government's decision to parole Petitioner into the county after he presented himself for lawful inspection at the border. The government's decision to release Petitioner and provide him work authorization created "'an implicit promise' that [his] liberty [would] be revoked only if [he failed] to abide by the conditions of his release." Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1179 (D. Nev. 2025) (citations omitted); see also Morrissey v. Brewer, 408 U.S. 471, 482 (1972) ("The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.") When Petitioner was inspected by border officials without being detained and granted entry into the country "on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing Doe v. Becerra, 787 F.Supp.3d 1083, 1093 (E.D.

Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

Petitioner's actions as a parolee show that he reasonably relied on his liberty interest, by obtaining work authorization, serving as the primary breadwinner for his family, applying for asylum, attempting to pay a fine for his sole misdemeanor conviction, and awaiting his 2027 immigration hearing. Although Petitioner's parole may have expired after one year, that does not diminish the significance of his liberty interest. See Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody") (collecting cases). Further, the fact that Federal Respondents did not seek to detain Petitioner upon the automatic expiration of his parole in June of 2024 or even acknowledge Petitioner's prior grant of parole in arresting and detaining him in February 2026, based on an obviously erroneous charged that he entered without inspection, further strengthens his liberty interest. Likewise, Federal Respondents have made no effort to explain why they found Petitioner to be neither dangerous or at risk of absconding and eligible for humanitarian parole in 2023, but not in February 2026, when they arrested him at a courthouse without a warrant, took his work authorization permit, used profane language, refused to answer when Petitioner asked why he was being arrested, and failed to make any individualized determination as to why his detention was justified. At the time he was arrested, Petitioner had developed strong financial and community ties to the country and timely applied for asylum, and nothing in the record indicates he was dangerous or a flight risk.

Second, the risk of an erroneous deprivation of Petitioner's liberty is extraordinarily high given the absence of any meaningful notice or opportunity to be heard upon Petitioner's arrest and throughout his detention. That risk of error is illustrated by the facts of this case, where ICE arrested Petitioner based on a mistaken assertion that he entered the United States without inspection or parole at a designated port of entry—even though ICE's own records described Petitioner's inspection and parole at a designated port of entry in Nogales, Arizona. Even if ICE

had detained him due to the fact that his parole had automatically expired, pursuant to regulation, Petitioner's detention would only have been permissible if the arresting officer considered whether he could be excluded, deported, or removed "within a reasonable time"—if not, regulation requires that he "shall again be released on parole unless in the opinion of the official . . . the public interest requires that the alien be continued in custody." 8 C.F.R. § 212.5(e)(1)-(2)(i). Here, however, there is no indication that the arresting officer made such a determination, and there has been no mechanism for Petitioner to challenge ICE's decision to return him to custody by ensuring either that his removal will be executed within a reasonable time or that ICE had a reasonable basis for deciding that the public interest requires his continued detention. Petitioner thus had no recourse to challenge his detention after his parole expired as based upon an erroneous or mistaken factual or legal predicate, or as otherwise arbitrary.

In contrast longstanding procedures under § 1226(a) and its implementing regulations—which the government has only recently abandoned after thirty years of consistent prior practice—would require a determination that Petitioner's detention is justified based on his individual circumstances, notice of that determination, and a meaningful opportunity to be heard by a neutral decisionmaker, subject to multiple levels of administrative and judicial review. See Jacobo-Ramirez, 2026 WL 879799, at *29–31; see also Rodriguez Diaz, 53 F.4th at 1210. Further, given Petitioner's prior parole status, a pre-deprivation hearing, where Petitioner would have notice and an opportunity to be heard by a neutral decisionmaker, would greatly reduce the risk of error. Cf. Morrissey, 408 U.S. at 483 (explaining that "the State has no interest in revoking parole without some informal procedural guarantees").

Third, the Court considers the government's interest and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. The government has "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). Thus, the government's interest in enforcing immigration law and presumed interest in detaining noncitizens who are dangerous, or a flight risk, is served, and not unduly

burdened, by the longstanding procedural protections provided to noncitizens like Petitioner to ensure they are indeed dangerous or at risk of absconding. Escobar Salgado v. Mattos, 809 F. Supp. 3d. 1123, 1160–62 (D. Nev. 2025). Moreover, the additional procedural requirements afforded under § 1226(a) which Petitioner has been deprived of reduce the fiscal and administrative burden of civil immigration detention. See Jacobo-Ramirez, 2026 WL 879799, at *30 (Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation omitted).

In sum, the Court finds the Mathews factors weigh heavily in favor of Petitioner and his arrest and ongoing detention violate his right to procedural due process.

### 2. Substantive Due Process

The Court further finds Petitioner's ongoing detention violates his right to substantive due process, because the government has asserted no special justification for his detention that outweighs his constitutionally protected liberty interest. See Zadvydas, 533 U.S. at 691–92 ("once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness."). To date, Federal Respondents have not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of his freedom. Accordingly, the Court further finds that Petitioner's ongoing detention violates his right to substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention violates his right to procedural and substantive due process and is, therefore, unconstitutional.

### IV.    REMEDY

Having found Petitioner remains in detention in violation of his statutory, regulatory, and constitutional rights, the Court's task is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the

largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (cleaned up) (citations omitted). Petitioner asks for his immediate release, or in the alternative, a prompt bond hearing where the government bears the burden of justifying his detention by clear and convincing evidence. The Court finds that Petitioner's immediate release from detention on the same conditions as his prior release, before he was arrested by ICE at the Utah courthouse, is the appropriate equitable remedy in this case.

The Supreme Court has consistently held that "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). While a post-deprivation hearing may be appropriate in situations that urgently require arrest, absent evidence of such urgent concerns, a pre-deprivation hearing is required to satisfy due process. Id. at 128. No such concerns are present here. Thus, "because the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the *status quo ante*—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." Kirykovich v. Hernandez, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original). Further, a bond hearing would not adequately vindicate Petitioner's rights. Indeed, ordering a hearing while Petitioner remains detained would reward the government for arresting and detaining him on a clearly erroneous basis without process, in violation of his statutory, regulatory, and constitutional rights. See id. The Court therefore finds that the appropriate remedy here is immediate release subject to the conditions of Petitioner's prior release on parole.

Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward, in the event of Petitioner's re-detention pursuant to § 1226(a). Cf. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to order that in the event of Petitioner's re-detention under 8 U.S.C. § 1226(a), Federal

Respondents must provide Petitioner a pre-deprivation bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate under § 1226(a) and its implementing regulations. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court's compliance with a district court's order that the government provide an immigration detainee a bond hearing "under the Due Process Clause," which required "the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing.") (citing Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)).

## V.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioner's Amended Petition for a Writ of Habeas Corpus is **GRANTED.**

**IT IS FURTHER ORDERED** Petitioner's (ECF No. 14) Motion for a Temporary Restraining Order is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Respondents **IMMEDIATELY RELEASE** Petitioner subject to the prior conditions of his parole status. In any event, Petitioner must be released **BY NO LATER** than **12:00 p.m.** on **May 15, 2026**.

**IT IS FURTHER ORDERED** Respondents **must inform Petitioner's counsel of the date, time, and location of Petitioner's release at least two hours in advance of said release**. Respondents must further **RETURN** Petitioner's personal property, including his employment authorization documents and any personal identification document, **upon his release**.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** that the Parties shall file a **JOINT STATUS REPORT** by **May 18, 2026** confirming Petitioner's release and Respondents' compliance with this Order.

**The Clerk of Court is kindly instructed to:**

**(1) AMEND the case caption and docket to reflect:**

    a.  Petitioner's name: Augusto Cesar Reyes Campos.

    b.  The Respondents as named in the (ECF No. 6) First Amended Petition: (1) John Mattos, Michael Bernacke, Todd Lyons, Markwayne Mulin, and Todd Blanche.

**(2) ENTER judgment accordingly close this case.**

The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14

**DATED:** May 15, 2026.

 

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**